JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Juan "Tony" Molina | Palisades Federal Credit Union |

| (b) County of Residence of First Listed Plaintiff | Bergen | County of Residence of First Listed Defendant | Rcokland County, NY |
|---|---|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | | *(IN U.S. PLAINTIFF CASES ONLY)* | |
| | | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. | |

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Dean T. Bennett, Esq. (973) 544-0800, dtb@mmgbblaw.com
Maitlin Maitlin Goodgold Brass & Bennett
33 Bleeker St., Suite 210, Millburn, NJ 07041

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product  Product Liability | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability  ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &  Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander  Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'  Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability  ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine  Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product  Liability | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability  **PERSONAL PROPERTY** | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  ☐ 371 Truth in Lending | Act | **SOCIAL SECURITY** | Protection Act |
| ☒ 190 Other Contract | Product Liability  ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal  Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury  ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | ☐ 362 Personal Injury -  Product Liability | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting  ☐ 463 Alien Detainee | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment  ☐ 510 Motions to Vacate | | or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/  Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations  ☐ 530 General | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -  ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment  **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -  ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other  ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education  ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC Sec. 1332

Brief description of cause:
Breach of Contract for payment of SERP 457F benefits.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $ 180,000.00

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE                                          DOCKET NUMBER

DATE   5/9/2022

SIGNATURE OF ATTORNEY OF RECORD   Dean T. Bennett

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN "TONY" MOLINA | Civil Action No.: |
| *Plaintiff,* | |
| vs. | |
| PALISADES FEDERAL CREDIT UNION | **COMPLAINT** |
| *Defendant.* | |

Plaintiff, JUAN "TONY' MOLINA (hereinafter referred to as "Plaintiff" or "Molina") residing by way of Complaint against the Defendant, alleges the following:

## THE PARTIES

1.      Plaintiff is an individual residing 765 Mountain Avenue, Wyckoff, New Jersey 07481.

2.      Defendant PALISADES FEDERAL CREDIT UNION (hereinafter referred to as "PFCU") is a credit union organized and existing under the laws of the United States of America having its executive office at 300 North Middletown Road, Suite 6, Pearl River, New York 10965.

3.      Molina served as the Chief Executive Officer for PFCU from November 3, 2014, until January 31, 2022.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court pursuant to U.S.C. 26 sec. 1332 because the Plaintiff is a citizen of the State of New Jersey and the Defendant is a citizen of the State of New York. Therefore, there is complete diversity.

5.      The amount in controversy exceeds $75,000.

MAITLIN MAITLIN GOODGOLD BRASS &
BENNETT
33 BLEEKER STREET
MILLBURN, NJ 07090

## NATURE OF THE ACTION

## FACTS COMMON TO ALL COUNTS

6.     On or about August 29, 2014, PFCU extended an offer employment to Molina as its Chief Executive Offer (hereinafter referred to as "Offer Letter"). The Offer letter is attached hereto as EXHIBIT "A."

7.     The Offer Letter provided, among other things, that beginning a year after his starting date, PFCU would implement a non-qualified SERP/457(f) to guarantee Molina lump sum benefits in amounts and at ages as agreed upon by you and the Board of Directors.

8.     The availability of the Executive Retirement Plan (SERP)/457(f) was a primary inducement which persuaded Molina to accept the offer; relying on that promise, and well aware that PFCU was one of the last credit unions to offer this benefit, uprooted his family and moved them to New Jersey from Detroit, Michigan.

9.     Molina started his employment as Chief Executive Officer of PFCU on April 29, 2015.

10.    On January 25, 2017, Molina and PFCU executed a Deferred Compensation Agreement (hereinafter referred to as "Deferred Compensation Agreement."), a copy of which is attached as EXHIBIT B.

11.    Upon information and belief, Molina was paid the compensation for the year ended December 31, 2018.

12.    Molina was also paid Deferred Compensation per the Deferred Compensation Agreement in May of 2019.

13.    PFCU was billed by Certus Legal Group, LTD. for the preparation of a deferred compensation agreement and all related matters on October 14, 2019.

14.    Despite the repeated promises of PFCU's Board of Directors, Molina has not been paid any Deferred Compensation since the initial payment referred to in paragraph 11.

2

MAITLIN MAITLIN GOODGOLD BRASS & BENNETT
33 BLEEKER STREET
MILLBURN, NJ 07090

15.    On January 1, 2020, Molina and PFCU entered into an Employment Agreement (hereinafter referred to as the "Employment Agreement").

16.    The Employment Agreement calls for Molina to continue as Chief Executive Officer as PFCU considers "the continued availability of Molina's services to be important to the successful management and conduct of the Credit Union's business and desires to for itself the continued availability of his service."

17.    In addition, the Employment Agreement states that Molina shall be "entitled to participate in any and all retirement plans" and "plans for deferred compensation or similar plans or policies of the Credit Union in effect for the benefit of its senior management employees." The Employment is attached as EXHIBIT "C."

18.    Plaintiff executed the employment agreement in reliance on the fact that he had been promised the deferred compensation benefit.

19.    In May 2021, PFCU informed Molina that they would not be paying him the Deferred Compensation, notwithstanding that the Offer Letter, Deferred Compensation Agreement and the Employment Agreement (hereinafter collectively referred to as the "Agreements") all provide for his eligibility.

20.    On July 26, 2021, Plaintiff, by counsel, sent Defendant a letter demanding that Defendant restore Plaintiff's benefits retroactively to the date they were terminated. The letter is attached hereto as EXHIBIT "D."

21.    Defendant simply ignored counsel's letter.

22.    Plaintiff resigned from PFCU on November 3, 2021.

3

**COUNT I**
**(Breach of Contract)**

23.    Plaintiffs repeat and incorporate by reference each preceding allegation.

24.    Defendant committed a substantial and material breach of the Agreements by not paying Plaintiff the amounts owed to him under the deferred compensation plan it had in place for Plaintiff.

25.    As a direct and proximate result of PFCU's actions, Plaintiff has been damaged in an amount not less than $180,000.00, which will be set forth with more specificity at the time of trial.

**COUNT II**
**(Unjust Enrichment)**

26.    Plaintiffs repeat and incorporate by reference each preceding allegation.

27.    By not paying Plaintiff the amount due under the agreements, Defendant has been unjustly enriched.

28.    As a direct and proximate result of PFCU's actions, Plaintiff has been damaged in an amount not less than $180,000.00, which will be set forth with more specificity at the time of trial.

**COUNT III**
**(Fraudulent Inducement)**

29.    Plaintiffs repeat and incorporate by reference each preceding allegation.

30.    By stating that Defendant would provide an Executive Retirement Plan to Plaintiff, Defendant induced Defendant to take the position of CEO at Defendant.

31.    Plaintiff took his position with PFCU and relocated with his family in reliance on this promise.

32.    As direct and proximate result of PFCU's actions, Plaintiff has been damaged in an amount not less than $180,000.00, which will be set forth with more specificity at the time of trial.

MAITLIN MAITLIN GOODGOLD BRASS &
BENNETT
33 BLEEKER STREET
MILLBURN, NJ 07090

4

WHEREFORE, Plaintiff respectfully requests the following relief:

a.     As to Count I, Count II and Count III, Judgment be entered in favor of Plaintiff and against the Defendant in the amount of $180,000.00 due and owing as benefits the Agreements between Plaintiff and Defendant,

b.     Awarding Plaintiff interest, attorneys' fees, costs of suit; and,

c.     Granting such other, further, and different relief as to this Court may seem just, equitable and proper under the circumstances.

**MAITLIN MAITLIN, GOODGOLD**
**BRASS & BENNETT**
33 Bleeker Street, Suite 210, Millburn, NJ 07041
Tel. (973) 544-0800
Attorneys for the Plaintiff


s/Dean T. Bennett
By:_____
    Dean T. Bennett (042711987)

Dated: March 30, 2022

5

# EXHIBIT A

August 29, 2014

Juan Molina
15400 Wick Rd.
Allen Park, MI 48101

Dear Juan,

On behalf of Palisades Federal Credit Union, D. Hilton Associates, Inc. is pleased to extend to you an offer of employment for the position of Chief Executive Officer.

This letter will summarize the essential elements of this offer:

- **Start Date:** Monday, November 3, 2014.

- **Base Salary:** Starting annualized salary of $170,000. You will be paid $6538.46 in gross wages every two weeks during your employment tenure with Palisades Federal Credit Union.

- **Sign On Bonus:** You will receive a sign on bonus of $15,000, contingent upon your starting employment on or before Monday, November 3, 2014, to be received in your first pay period. In the event you voluntarily terminate your employment within one (1) year of your start date, you will be required to reimburse this Sign On Bonus to Palisades Federal Credit Union.

- **Performance Review:** You will receive a 120-day performance review as well as annual written performance evaluations. Evaluation criteria will be based upon the goals and objectives to be determined by the Board of Directors.

- **Annual Performance Bonus:** You will be eligible to receive an annual bonus of up to 20% of your base salary, payable in the first quarter of each year following the year that the bonus is earned. The bonus will be based upon your achieving specified organizational and financial objectives and goals as agreed upon by you and the Board of Directors of Palisades Federal Credit Union, and clearly defined in the Credit Union's strategic plan. Your bonus for 2014 will be prorated.

- **401 (k) Plan:** You will be eligible to participate in Palisades Federal Credit Union Employees' 401(k) Plan after you have completed one year of continuous full-time employment. You may enroll in the 401(k) Plan on or about your one-year anniversary with Palisades Federal Credit Union. The Credit Union will match 50% up to the first 6% deferred by the employee.

- **Pension Plan:** You will be eligible to participate in Palisades Federal Credit Union Employee's Pension Plan after you have completed one year of continuous employment. The Credit Union will contribute 3% of your base salary to the pension plan.

- **Supplemental Executive Retirement Plan (SERP) / 457(f):** After one (1) year of your start date as President/CEO, the credit union will implement a nonqualified SERP/ 457(f) that guarantees a lump sum benefit in amounts and at ages as agreed upon by you and the Board of Directors.

1

- **Relocation/Transitional Expenses:**

  - Relocation Benefit: Palisades Federal Credit Union will provide a Relocation Benefit of up to $15,000 for the costs associated with your move from Michigan to the Pearl River, New York area. Payment of part or all of this incentive may be deferred to twenty four (24) months from your date of hire.

  - Up to five (5) days off with pay will be given to help relocate the family.

  - For your first home purchase (if financed through PFCU), we will hold the mortgage at market rate available in the area, and will pay all closing costs.

  - For up to 60 days, temporary housing will be reimbursed (at Fairfield Inn or equivalent), plus $50 per diem for meals and incidentals.

  - Airfare Benefit: You will be provided reimbursement for up to eight (8) (round trip) coach air-fare tickets during your transition to the Pearl River area. The tickets are to be used within 9 (nine) months of your start date and may be used by you or your spouse in any combination at your discretion.

  - Reimbursement of Paid Benefits: In the event you voluntarily terminate your employment, expenses related to your Relocation Benefits will be due and payable to Palisades Federal Credit Union as follows:

    *Within the first year of employment, 100% of costs will be reimbursed to Palisades Federal Credit Union. Thereafter, relocation expenses will be amortized over a period of two additional years.*

- **Health Benefits:** You will be eligible to participate in: medical, HRA, life, AD&D, LTD, STD, and FSA starting with the first of the month following 30 days of continuous employment. Dental eligibility has a one year waiting period. A copy of the benefit summary and costs associated with the plan will be provided to you. Palisades Federal Credit Union will cover the costs associated with COBRA coverage for you and your family during the 30 day period before you are eligible for the Credit Union's health benefits.

- **Paid Time Off:** You will receive the equivalent of 20 days of PTO annually, which will be prorated for calendar year 2014.

- **Holidays:** Palisades Federal Credit Union observes 11 paid federal holidays per year.

- **Employee Assistance Program:** Palisades Federal Credit Union offers an Employee Assistance Program to all employees and their families. The premiums are paid for by the Credit Union. Coverage of the Employee Assistance Program by the Credit Union is subject to change.

- **Education:** The Credit Union encourages you to attend educational conferences, executive group sessions and seminars which pertain to the current and future operations of the Credit Union, as agreed upon in advance by you and the Board of Directors.

- **Business, Expenses:** Palisades Federal Credit Union will provide you with a company credit card for all reasonable prudent expenses incurred by you as the President/CEO. All expenses must be documented with receipts provided.

- **Business Equipment:** The Credit Union will provide you with the business equipment and Internet connection to facilitate your work as Chief Executive Officer. The equipment is the property of the Credit Union.

- **Employment Severance:** In the event your employment with Palisades Federal Credit Union is terminated by the Board of Directors, other than for cause, dissolution of the company, or disability, you will be paid six (6) months of base salary.

*Please be advised that your employment with Palisades Federal Credit Union will be "at will." This means that either you or the credit union may end your employment relationship at any time, with or without cause or notice. This offer is contingent upon the successful completion and negative results of a panel drug screen, to be administered by a vendor laboratory under contract to Palisades Federal Credit Union. Palisades Federal Credit Union will provide you with paperwork and location information as soon as possible.*

Juan, please confirm your acceptance of this offer by signing and dating in the space provided below and faxing and/or scanning the signed offer back to Sarah Hilton, Assistant Vice President, D. Hilton Associates at 281-364-9433 or sarah@dhilton.com. *This offer will become null and void if not signed and returned by 5:00 pm, September 2, 2014.*

Congratulations!

Sincerely,

Greg Whalen, Chairman of the Board
Palisades Federal Credit Union

8/31/14
Date

Accepted by:

Juan Molina

8-29-14
Date

3

# EXHIBIT B



## DEFERRED COMPENSATION AGREEMENT

PALISADES FEDERAL CREDIT UNION (the "Employer") and TONY MOLINA
("Employee") agree to enter into this DEFERRED COMPENSATION AGREEMENT
("Agreement") dated as of ___January 25, 2017___ , 2017 as follows:

### 1. PURPOSE.

The purpose of this Agreement is to provide deferred compensation to Employee in accordance
with the terms described in this Agreement. This Agreement is intended to be an unfunded
deferred compensation arrangement subject to Sections 409A and 457(f) of the Internal Revenue
Code of 1986, as amended, and regulations thereunder, and other applicable law.

### 2. DEFERRED COMPENSATION ACCOUNT.

The Employer shall establish and maintain a memorandum account in the name of Employee.

Such account shall be credited or charged with

  (i)  Employer contributions in such amounts as the Employer may determine; and

  (ii)  income, gains, or losses as determined in accordance with the investment in
    Pershing LLC Account number: N8U951413.

### 3. ENTITLEMENT TO PAYMENT.

Employee shall become entitled to payment under this Agreement if <u>all</u> of the following the
  conditions are met:

  (i)  Employee remains actively employed by the Employer until the earliest to occur
    of the following events:

    (A)  December 31, 2018; or

    (B)  Separation from service with the Employer prior to December 31, 2018 by
      reason of his Total Disability or death; or

    (C)  Involuntary separation from service with the Employer prior to December
      31, 2018 for reasons other than Cause.

    If Employee's service terminates for any other reason prior to December 31,
    2018, he will, upon separation from service, forfeit right to all benefits under this
    Plan.



(ii)     The Employer at all times during this Agreement has maintained a CAMEL rating of at least 3 or higher.

(iii)    The Employer's capital ratio (i.e. Net Worth *divided by* Total Assets) is greater than 10% of as of December 31, 2018.

For purposes of this Section 3:

(iv)     The Employee's employment will be considered to be terminated for "Cause" if the Board of Directors of the Employer (the "Board") determines, in its sole discretion, that Employee's employment has been terminated by reason of his gross negligence, embezzlement or a felony related to his duties with the Employer.

(v)      The Employee will be considered to have a "Total Disability" if he (A) is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than twelve (12) months; (B) is, by reason on any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than twelve (12) months, receiving income replacement benefits for a period of not less than three (3) months under an accident and health plan covering employees of the Employer; or (C) is determined to be totally disabled by the Social Security Administration

### 4.  AMOUNT AND TIMING OF PAYMENT.

The amount payable to Employee under this Agreement shall be equal to the LESSER OF (i) or (ii) below:

(i)      $180,000; or

(ii)     the excess (if any) of

(A)      the value of the Deferred Compensation Account as of December 31, 2018,

### *OVER*

(B)      the sum of (I) Employer contributions credited to the Account *plus* (II) the amount of expenses attributable to the investment of such Account.

Payment will be made in a single lump sum thirty (30) days after the Entitlement Date.



## 5. ADMINISTRATION.

The Board shall have full authority and power to administer and construe this Agreement, subject to applicable requirements of law. Without limiting the generality of the foregoing, the Board shall have the following powers and duties:

To interpret this Agreement and to decide all questions concerning this Agreement;

To determine the eligibility of any person to receive benefits under this Agreement, and to determine the amount and the recipient of any payment to be made under this Agreement;

To make all other determinations and to take all other steps necessary or advisable for the administration of this Agreement.

All decisions made by the Board pursuant to the provisions of this Agreement shall be made in its sole discretion and shall be final, conclusive, and binding upon all parties.

## 6. AMENDMENT.

This Agreement may not be amended except by a written agreement signed by both parties.

## 7. UNFUNDED AGREEMENT FOR TAX PURPOSES.

Nothing in this Agreement shall be construed as giving Employee any claim against any specific assets of the Employer or as imposing any trustee relationship upon the Employer in respect of Employee. The Employer shall not be required to segregate any assets in order to provide for the satisfaction of the obligations hereunder. Investments deemed held for purposes of this Agreement shall continue to be a part of the general funds of the Employer, and no individual or entity other than the Employer shall have any interest whatsoever in such funds. If and to the extent that Employee acquires a right to receive any payment pursuant to this Agreement, such right shall be no greater than the right of an unsecured general creditor of the Employer.

## 8. MISCELLANEOUS PROVISIONS.

**Right to Withhold Taxes.** The Employer shall have the right to withhold such amounts from any payment under this Agreement as it determines necessary to fulfill any federal, state, or local wage withholding requirements.

**No Right to Continued Employment.** Neither this Agreement, nor any action taken under this Agreement, shall confer upon Employee any right to continuance of employment by the Employer nor shall it interfere in any way with the right of the Employer to terminate Employee's employment at any time.



**I brougBenefits Non-Assignable.** Benefits under this Agreement may not be anticipated, assigned or alienated, and will not be subject to claims of Employee's creditors by any process whatsoever.

**Governing Laws.** The provisions of this Agreement shall be construed, administered and enforced according to applicable Federal law and the laws of the State of New York.

**No Other Agreements or Understandings.** This Agreement represents the sole agreement between the Employer and Employee concerning the retention bonus compensation described in this Agreement and it supersedes all prior agreements, arrangements, understandings, warranties, representations, and statements between the parties concerning its subject matter.

**Counterparts.** This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, and such counterpart will together constitute but one Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year set forth below.

**PALISADES FEDERAL CREDIT UNION**                **EMPLOYEE**

By: _Pamela Wiss_                                 _Pamela Wiss_

Name: _Pamela Wiss_                               Date: _1-25-17_

Title: Board Chair

Date: 1-25-2017

4813-7410-9502, v. 3

300 N. Middletown Road • Suite 6 • Pearl River, NY 10965-1244 •
Phone (845) 602-4242 • (800) 438-7415 • Fax (845) 602-4444
Visit us at www.palisadesfcu.org

# EXHIBIT C

## EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT ("Agreement") is made and entered into as of the 1st day of January, 2020, by and between the **PALISADES FEDERAL CREDIT UNION**, (the "Credit Union") a Credit Union organized and existing under the laws of the United States of America and having its executive offices at 300 North Middletown Road, Suite 6, Pearl River, New York 10965 (the "Credit Union") and TONY MOLINA residing at 756 Mountain Ave, Wyckoff, New Jersey 07481 (hereinafter referred to as "MOLINA" or "CEO").

WHEREAS, MOLINA is currently serving as Chief Executive Officer of the Credit Union; and

WHEREAS, the Credit Union considers the continued availability of MOLINA'S services to be important to the successful management and conduct of the Credit Union's business and desires to secure for itself the continued availability of his services; and

WHEREAS, for the purposes of securing for the Credit Union MOLINA'S services, the Board of Directors of the Credit Union (the "Board") has approved and authorized the execution of this agreement with MOLINA on the terms and conditions set forth herein; and

WHEREAS, MOLINA is willing to continue to make his services available to the Credit Union on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the promises and the mutual covenants and obligations hereinafter set forth, the Credit Union and MOLINA hereby agree as follows:

1.     Employment

1

The Credit Union hereby continues the employment with MOLINA and MOLINA hereby accepts such continued employment, during the term of employment and upon the terms and conditions set forth in this agreement.

2.     Employment Term

a:     The terms and conditions of this Agreement shall be and remain in effect during the term of employment which shall commence effective January 1, 2020 and ending on May 31, 2022 (employment term).

b.     Notwithstanding anything herein contained to the contrary, MOLINA'S employment with the Credit Union may be terminated by the Credit Union during the employment term in accordance with the terms and conditions of this agreement.

c.     Nothing in this agreement shall mandate or prohibit a continuation of MOLINA'S employment following the expiration of the employment term upon such terms and conditions as the parties hereto may agree upon.

d.     This agreement shall automatically renew for one (1) year, at the conclusion of the initial term and each year thereafter, unless either party provides ninety (90) days written notice to the other party of the intention not to renew.

3.     MOLINA'S Duties

MOLINA shall:

a.     Devote his full business time and attention to the business and affairs of the Credit Union, use his reasonable best efforts consistent with best practices for Credit Union CEOs to advance the Credit Union's interests and shall   not be self-employed or employed by any other person, business, or firm; and

2

b.      Functioning within the limits of the Federal Credit Union Act, regulations, by-laws and policies, MOLINA as the CEO is responsible for and has commensurate authority to accomplish the duties set forth in Board Guideline H-4640, "Delegation to the CEO", dated April 29, 2015, and any other duties as may be delegated by the Board of Directors; and

c.      Report to the Board of Directors and shall perform those duties of CEO under the supervision and direction of the Board.

4.      Annual Job Review

Every year this agreement shall be in effect, the Board of Directors of the Credit Union shall evaluate and assess the performance of MOLINA on or before April 30th. Such evaluation shall relate to the duties and responsibilities of MOLINA under this agreement, and his progress toward established goals, and the working relationship between MOLINA, staff and the membership. The evaluation shall be done by the Board of Directors or its designated committee which shall meet with MOLINA to discuss the evaluation. In the event that the performance of MOLINA is deemed unsatisfactory in any respect, a majority of the Board of Directors shall describe in writing, in reasonable detail, specific instances of unsatisfactory performance. The evaluation shall include recommendations as to areas of improvement in all instances where the Board of Directors deems performance to be unsatisfactory. A copy of the written evaluation shall be delivered to MOLINA.

5.      Conflict of Interest

MOLINA shall inform the Chair of the Board, in writing, of any fact or situation which presents a conflict of interest or the appearance of a conflict of interest.

3

6.    MOLINA'S Salary

a.    In consideration of the services rendered and to be rendered by MOLINA under this agreement the Credit Union shall pay to MOLINA a salary at an annual rate equal to U.S. dollars $250,000.00, during each year of this Agreement. The Board of Directors, may in its sole discretion, determine salary increases over and above MOLINA's annual rate each year of this Agreement.

b.    The salary payable under paragraph 6(a) shall be paid in approximately equal installments in accordance with the Credit Union's customary payroll practices. Nothing in this agreement shall be construed as prohibiting the payment to MOLINA of bonuses, benefits or other compensation to the extent that any such payment, bonus or benefits are duly authorized by or under the authority of the Board of Directors, consistent with the Federal Credit Union Act, regulations, by-laws and policies.

c.    Car Allowance: MOLINA will be provided $500.00 each month as a car allowance while employed by the Credit Union.

d.    In addition to the compensation provided for herein, MOLINA shall be entitled to participate in any and all retirement plans, pension plans, insurance plans as set forth herein, disability plans, plans for deferred compensation or other similar plans or policies of the Credit Union in effect for the benefit of its senior management employees.

e.    The Board shall reimburse MOLINA for all reasonable travel expenses, including food and lodging, while attending any conferences where his attendance is required by the Board and the expenses have been approved by the Board of Directors.

f    MOLINA shall be reimbursed for all reasonable expenses incurred in the performance of his duties as approved by the Board of Directors.

4

7.     Sick Leave, Vacation and Personal Days

         a.      MOLINA shall be entitled to sick leave, vacation and personal days in accordance with the Credit Union's policies regarding same, including the right to carryover up to one-hundred and twenty (120) hours of Paid Time Off ("PTO") time from one year to the next, as described in "Palisades Federal Credit Union Employee Handbook". MOLINA shall receive five (5) additional personal days every year this agreement is in effect.

8.     Medical and Life Insurance During the Employment Term

         a.      The Credit Union shall provide and pay the premium for group medical insurance for MOLINA during the term of this agreement as set forth in the group health insurance program the Credit Union selects for its employees.

9.     Termination of Employment for Cause

In the event that MOLINA'S employment with the Credit Union shall be terminated during the employment term or any extended employment term for "cause" as defined below, the Credit Union shall have no further obligation under this agreement other than the payment to MOLINA of his earned, but unpaid, salary as of the date of the termination of his employment and the provision of such other benefits to which he may be entitled as a former employee under the Credit Union's benefits and programs and the Credit Union's compensation plans and programs.

The termination of MOLINA for "cause", which, for the purposes of this agreement, shall mean a discharge because the Board of Directors determines by the affirmative vote of a majority of its members acting in good faith that MOLINA:

5

       a.     has intentionally engaged in an act or acts which have been adjudged to constitute or resulted in a guilty plea to felony under the federal laws of the United States or the laws of any State;

       b.     has intentionally engaged in an act or acts of dishonesty which were undertaken with the intent of causing material injury to the Credit Union; or

       c.     has materially breached the terms of this agreement, including but not limited to, failing to act in accordance with the Federal Credit Union Act, regulations, by-laws and policies, and fails to cure such breach within Thirty (30) days following written notice of such breach from the Board of Directors.

Any such vote by the Board of Directors on discharging MOLINA for "cause" shall not be made prior to the expiration of a Thirty (30) day period following the date on which the Board of Directors shall by written notice to MOLINA furnish to him a written statement of its grounds for proposing to make a determination that MOLINA be discharged for "cause." During this Thirty (30) day period, MOLINA shall be afforded a reasonable opportunity to make oral and/or written presentations to the members of the Board of Directors on his own behalf with or through a representative who may be his legal counsel to refute the grounds of fraud or violations of State or Federal law, the Federal Credit Union Act, and/or the NCUA Regulations and otherwise oppose the proposed determination. During this Thirty (30) day period, MOLINA shall not be entitled to receive pay and benefits if the termination for "cause" is based upon violations of Section 9(a) or 9 (b) of this agreement. However, MOLINA will be entitled to full reimbursement for all pay and benefits withheld should it be determined that he did not violate this agreement.

6

In the event the Board of Directors elects to terminate MOLINA's employment in accordance with this Section, such termination shall be without prejudice to any other remedy to which the Credit Union may be entitled under law, equity, or this Agreement. Furthermore, the termination will be effective as of the date of the original written notice of termination and neither party shall have any further obligation to the other (including the payment of any severance benefits by the Credit Union to MOLINA) except for MOLINIA's obligations set forth in Paragraphs 11 and 15 of this Agreement, which will remain in full force and effect. Specifically, should the Credit Union terminate this Agreement for Cause, MOLINA shall not be entitled to any further compensation other than MOLINA's earned but unpaid base salary up to the effective date of termination of employment with the Credit Union (the "Termination Date").

10.     Termination of Employment Without Cause

In the event of termination by the Credit Union for reasons other than those set forth in Subsection 9 herein, MOLINA shall be paid as termination compensation an amount equal to three (3) months' salary at the then applicable salary level, and two month's salary at the then applicable salary level for each year of employment by the Credit Union prior to the effective date of termination, to a maximum of twelve (12) months of the then current salary. This amount shall be paid on the date of termination of this Agreement or on such other basis over a 12 month period as may be determined by the Credit Union. Such termination compensation payment shall be conditioned upon MOLINA's acceptance and execution of a written release of all pending or potential claims against the Credit Union. The form of such release shall be determined by the Credit Union in its sole discretion.

7

In the event of a merger of the Credit Union with another organization, if the Credit Union immediately following such transaction does not retain more than fifty percent (50%) of the voting power of the Board of Directors of the successor entity, MOLINA may at his option, within 270 days of formal completion of the merger, voluntarily choose to leave the successor entity, without reason, and shall be paid as separation compensation an amount equal to twelve (12) months' salary at the then applicable salary level. This amount shall be paid on the date of separation, or on such other basis as may be mutually agreed. Such separation compensation payment shall be conditioned upon MOLINA's acceptance and execution of a written release of all pending or potential claims against the Credit Union and/or the successor entity. The form of such release shall be determined by the successor entity.

11.     Voluntary Resignation by MOLINA

In the event that MOLINA desires to voluntarily resign from the Credit Union prior to the end date of this Agreement, he must provide at least ninety (90) days written notice, and assist in successor training as part of a transition period.

However, if MOLINA obtains employment in a financial institution within ninety days (90) days after the effective date of his termination from employment, MOLINA must compensate the Credit Union with an amount equal to twenty-five thousand dollars ($25,000.00). In addition, MOLINA is prohibited from recruiting any of the employees from the Credit Union for a period of one (1) year.

12.     Death or Disability of MOLINA

a.     In the event of the death of MOLINA during the employment term hereof, this Agreement and the employment of MOLINA hereunder shall terminate and come

8

to an end on the death of MOLINA, subject to the terms of any other benefit program or plan that MOLINA may be participating in.

        b.     In the event of death of MOLINA during the employment term hereof, and in the event that MOLINA's eligible covered dependents elect to continue coverage pursuant to COBRA, the Credit Union shall pay the COBRA major medical insurance premium for MOLINA'S eligible covered dependents for a period of Six (6) months, or until they are covered by other insurance, whichever is sooner.

        c.     Disability.   In the event that MOLINA incurs a disability during MOLINA's employment with the Credit Union, this Agreement and MOLINA's employment hereunder shall terminate as of the date of the disability.  Upon a termination of MOLINA's employment by virtue of MOLINA's disability under this Section, MOLINA shall be eligible for benefits as detailed in the Credit Union's policies and plans.  For purposes of this Agreement, "disability" means a medically determinable physical or mental impairment resulting in MOLINA's inability to perform the duties of MOLINA's position or any substantially similar position, where such impairment can be expected to result in death or can be expected to last for a continuous period of not less than six months, as determined by a physician chosen by the Board.

13.    Successors and Assigns

9

This agreement will inure to the benefit of and be binding upon MOLINA, his legal representatives and testate and intestate distributes, and the Credit Union, its successors and assigns.

14.     Notices

Any communication to a party required under this agreement, including, but not limited to, any notice, direction, designation, consent, instruction, objection or waiver, shall be in writing and shall be deemed to have been given at such time as it is delivered personally or five (5) days after mailing if mailed, postage prepaid, by registered or certified mail, return receipt requested, addressed to such party at the address listed below or at such other address as any such party may by written notice specify to the other party:

Notice to MOLINA:                   TONY MOLINA
                                    756 Mountain Ave.
                                    Wyckoff, New Jersey 07481

Notice to the Credit Union:         Attn: Pamela Wiss
                                    Board of Directors
                                    Palisades Federal Credit Union

With copy to:                       Mitchell B. Pollack, Esq.
                                    Mitchell Pollack & Associates PLLC
                                    150 White Plains Road, Suite 310
                                    Tarrytown, New York 10591

15.     Proprietary Information

MOLINA recognizes, agrees and admits that during the terms of this agreement and after the termination or other expiration of this agreement, any and all information, data, figures, projections, estimates, member lists, transaction records, account records, personnel

10

records, personnel history, accounting procedures, constitute confidential and proprietary information which is the exclusive property of the Credit Union (the foregoing items are hereinafter collectively referred to as "Proprietary Information"). The proprietary information shall not be disclosed or divulged to any person, corporation, firm or other entity during the agreement and after the termination or expiration of the agreement. All files, records, documents, materials, charts, graphs, data storage devices, computer disks, computer drives or other data storage equipment and any notes, memoranda and writings of any kind which contain proprietary information shall be returned immediately to the Credit Union upon the termination or other expiration of this agreement or sooner if requested by the Credit Union.

16.     Severability

A determination that any provision of this agreement is invalid or unenforceable shall not affect the validity or enforceability of any other provision hereof.

17.     Waiver

Failure to insist upon strict compliance with any of the terms, covenants or conditions hereof shall not be deemed a waiver of such term, covenant, or condition. A waiver of any provision of this agreement must be made in writing, designated as a waiver, and signed by the party against whom its enforcement is sought. Any waiver or relinquishment of any right or power hereunder at any one or more times shall not be deemed a waiver or relinquishment of such right or power at any other time or times.

18.     Counterparts

This agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same agreement.

19.     Governing Law; Venue

11

This agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York and all actions to enforce this Agreement shall be brought in a competent Court in the State of New York.

20.     Headings

The headings of paragraphs in this agreement are for convenience of reference only and are not intended to qualify or define the meaning of any paragraph. Any reference to a paragraph number shall refer to a paragraph of this agreement, unless otherwise stated.

21.     Entire Agreement; Modifications

This instrument contains the entire agreement of the parties relating to the subject matter hereof, and supersedes in its entirety any and all prior agreements, understandings or representations relating to the subject matter hereof. No modifications of this agreement shall be valid unless made in writing and signed by the parties hereto. MOLINA shall be subject to the personnel policies and procedures of the Credit Union to the extent that such policies and procedures are not inconsistent with the terms and provisions of this Agreement.

22.     Assignment

This agreement is personal to MOLINA and shall not be assigned by MOLINA. MOLINA shall not assign or otherwise transfer his interests in this agreement without the prior written consent of the Credit Union which may be withheld for any reason or no reason in the sole discretion of the Credit Union.     The Credit Union shall be permitted to assign this Agreement to its successors and assigns, and all covenants and agreements hereunder shall inure to the benefit of and be enforceable by or against its successors and assigns. The terms "successors" and "assigns" shall include any Credit Union merger or consolidation.

12

IN WITNESS WHEREOF, the parties have duly executed this agreement as of the date first above written.

PALISADES FEDERAL CREDIT UNION

By: _____

Pamela Wiss
Chair, Board of Directors

_____
Tony Molina

13

# EXHIBIT D

# MAITLIN MAITLIN GOODGOLD
# BRASS & BENNETT

ATTORNEYS AT LAW

Dean T. Bennett, Esq., Partner
Direct Dial : (862) 206-7148
33 Bleeker Street, Suite 210
Millburn, NJ 07041
dtb@mmgbblaw.com | mmgbblaw.com

July 26, 2021

**SENT BY OVERNIGHT MAIL TO:**
Ms. Pamela Wiss
Chair, Board of Directors
Palisades Federal Credit Union
300 North Middletown Road, Suite 6
Pearl River, New York 10965

Re:     **Juan Molina ads. Palisades Federal Credit Union**

Dear Ms. Wiss:

This Firm represents Juan Molina in connection with what we regard as a substantial and material breach of the employment agreement entered into between Mr. Molina and Palisades Federal Credit Union ("the Credit Union") on or about January 1, 2020 ("the Agreement"), which governs the terms of his employment through May 31, 2022.

I refer specifically to the Credit Union's unilateral decision, during the term of the Agreement, to terminate the SERP/457(f) plan ("the 457") it had implemented on his behalf.

While the employment agreement omits specific mention of the 457, Mr. Molina's entitlement to that benefit is well established. The offer extended to Mr. Molina on August 29, 2014 provided, in relevant part, as follows:

After one (1) year of your start date as President/CEO the credit union will implement a nonqualified SERP/457(f) that *guarantees* a lump sum benefit *in amounts and at ages as agreed upon by you and the Board of Directors.* (emphasis supplied)

Mr. Molina relied upon the Credit Union's guarantee, and the 457 was implemented and maintained until May of 2021. The language of the Agreement, in context with the offer letter, cannot be reasonably construed to have endowed the Credit Union with the unilateral authority to terminate the benefit. Indeed, the fact that distribution "amounts and ages" were made subject to the agreement between Mr. Molina and the Board implies that the continued implementation of the 457 was contemplated by the parties.

We demand that the Board restore our client's benefit, retroactive to the date it was terminated.

I have advanced my calendar for ten (10) days to take appropriate action on my client's behalf in the event we do not hear from you.

Very truly yours,

*s/ Dean T. Bennett, Esq.*

cc: Mr. Molina



After printing this label:

**RECEIVER COPY - PLEASE PLACE IN FRONT OF POUCH**

1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

We're Online!
How may I help you today?

